EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
AMY HADDIX, State Bar No. 183944
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5893
 Fax:  (415) 703-1234
 Email:  Amy.Haddix@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ANTHONY E. JOHNSON,** | C 06-5539 MJJ (PR) |
| Petitioner, | **SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| **TONY MALFI, Warden, et al.,** | |
| Respondent. | |

### I.

### CUSTODY

Petitioner is in the custody of respondent pursuant to the lawful judgment and order of commitment of the Sonoma County Superior Court in *People v. Johnson* (Super. Ct. Nos. SCR-31910 & SCR-31911).  The commitment results from two separate jury trials.  The first jury convicted petitioner in case number SCR-31910 of forcible rape (Cal. Pen. Code § 261, subd. (a)(2) – count 1), forcible oral copulation (Cal. Pen. Code § 288a, subd. (c)(2) – count 2), forcible sexual penetration by a foreign object (Cal. Pen. Code § 289, subd. (a)(2) – count 3), robbery (Cal. Pen.

Supplemental Answer to Petition for Writ of Habeas Corpus      Anthony E. Johnson v. Tony Malfi, et al.
C 06-5539 MJJ (PR)

1

1   Code § 211 - count 4), burglary (Cal. Pen. Code § 459 – count 5), terrorist threats (Cal. Pen. Code

2   § 422 – count 6), and dissuading a witness (Cal. Pen. Code § 136.1, subd. (b)(1) – count 7). As to

3   counts 1 through 3, the jury found true allegations that petitioner engaged in tying or binding of the

4   victim (Cal. Pen. Code § 667.61, subd. (e)(6)), and that he committed the sexual offense during a

5   burglary (Cal. Pen. Code § 667.61, subd. (e)(2)). CT [SCR-31910] 6-12 [information]; CT [SCR-

6   31910] 204-215 [verdicts]. Petitioner separately admitted that he had served two prior prison terms

7   within the meaning of California Penal Code section 667.5, subdivision (b). CT [SCR-31910] 216.

8          A separate jury convicted petitioner in case number SCR-31911, of solicitation to commit

9   murder (Cal. Pen. Code § 653f, subd. (b) – count 1), and conspiracy to commit murder (Cal. Pen.

10  Code §§ 182, subd. (a)(1) & 187 – count 2). CT [SCR-31911] 65-67 [amended information]; CT

11  [SCR-31911] 197, 245-246 [verdicts].

12         The trial court sentenced petitioner on both cases to a determinate term of 25 years and an

13  indeterminate term of 50 years to life in prison. CT [SCR-31910] 236-243; CT [SCR-31911] 280-

14  286.

## II.

## GENERAL AND SPECIFIC DENIALS

17         Except otherwise admitted, respondent denies each and every allegation of the petition

18  which, if found true, would form the basis for federal habeas corpus relief. Specifically, respondent

19  denies petitioner's allegations that (1) the trial court violated his right to due process and to present

20  a defense by denying his request to call defense witness Marvin Jackson to the stand and to instruct

21  the jury that it could draw negative inferences from the witness's refusal to testify; and (2) that the

22  trial court violated petitioner's right to present a defense and to a fair trial by the cumulative effect

23  of the foregoing error and by the court's refusal to instruct the jury on entrapment.

## III.

## PROCEDURAL DEFENSES

27         Petitioner's claims are exhausted. The petition filed on October 11, 2006, is timely.

---

Supplemental Answer to Petition for Writ of Habeas Corpus          Anthony E. Johnson v. Tony Malfi, et al.
                                                                  C 06-5539 MJJ (PR)

IV.

## LODGED DOCUMENTS

Records of petitioner's trial and appellate proceedings were lodged with this Court on April 9, 2007, in conjunction with the People's Answer to the Petition for Writ of Habeas Corpus filed in Case No. C 06-5539 MJJ.

V.

## INCORPORATION BY REFERENCE

Respondent hereby incorporates by reference all factual statements contained in the accompanying Memorandum of Points and Authorities in Support of Answer.

WHEREFORE, respondent respectfully asks that this Court discharge the order to show cause, deny the petition for writ of habeas corpus, and dismiss the proceedings.

Dated:  February 12, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General

/s/  Amy Haddix

AMY HADDIX
Deputy Attorney General
Attorneys for Respondent

Supplemental Answer to Petition for Writ of Habeas Corpus

Anthony E. Johnson v. Tony Malfi, et al.
C 06-5539 MJJ (PR)

3

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Johnson v. Malfi, et al.**

No.:     **C 06-5539 MJJ (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>February 12, 2008</u>, I served the attached

**SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Anthony E. Johnson
California State Prison – Sacramento
Prisoner I.D. #K-00750
P. O. Box 290066
Represa, CA 95671-0066

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 12, 2008, at San Francisco, California.

| | |
|---|---|
| _____Amy Haddix_____ | _____/s/ Amy Haddix_____ |
| Declarant | Signature |

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  AMY HADDIX, State Bar No. 183944
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5893
    Fax:  (415) 703-1234
8   Email:  Amy.Haddix@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

| | |
|---|---|
| **ANTHONY E. JOHNSON,** | C 06-5539 MJJ (PR) |
| Petitioner, | |
| **v.** | |
| **TONY MALFI, Warden, et al.,** | |
| Respondent. | |

19

20   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     <u>SUPPLEMENTAL</u> ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2                                                                                                 **Page**

3  STATEMENT OF THE CASE                                                                            1

4  STATEMENT OF FACTS                                                                               2

5  ARGUMENT                                                                                         9

6      I.       STANDARD OF REVIEW APPLICABLE TO STATE
          PRISONER'S HABEAS PROCEEDINGS                                             9
7

    II.      THE TRIAL COURT DID NOT VIOLATE PETITIONER'S
8            RIGHTS TO DUE PROCESS AND TO PRESENT A DEFENSE
          BY REFUSING TO COMPEL DEFENSE WITNESS MARVIN
9            JACKSON TO INVOKE HIS PRIVILEGE AGAINST SELF-
          INCRIMINATION IN FRONT OF THE JURY, OR TO
10           INSTRUCT THE JURY THAT IT COULD DRAW A NEGATIVE
          INFERENCE THEREFROM                                                       10
11

          A.   Proceedings Below                                                       10
12

          B.   The Trial Court's Refusal To Compel Jackson To Invoke His Privilege In The
13                 Jury's Presence Was Consistent With California Statutory Law And Did Not
                Deprive Petitioner Of His Rights To Due Process Or To Present A Defense
14                                                                                         12

15           C.   Harmless Error                                                          15

16     III.    THE CUMULATIVE EFFECT OF THE COURT'S RULINGS
          REFUSING A DEFENSE INSTRUCTION ON ENTRAPMENT
17           AND REFUSING TO ALLOW PETITIONER TO DRAW A
          NEGATIVE INFERENCE FROM JACKSON'S FAILURE TO
18           TESTIFY DID NOT DEPRIVE PETITIONER OF DUE PROCESS
                                                                                  15
19

20 CONCLUSION                                                                                      17

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Bowles  v. United States*
439 F.2d 536 (D.C. Cir. 1970)                                              13, 14

5

*Brecht v. Abrahamson*
6    507 U.S. 619 (1993)                                                  10, 15, 16

7    *Ceja v. Stewart*
97 F.3d 1246 (9th Cir.1996)                                                    16

8

*Chambers v. Mississippi*
9    410 U.S. 284 (1973)                                                        16

10   *Clark v. Murphy*
331 F.3d 1062 (9th Cir. 2003)                                                   9

11

*Donnelly v. DeChristoforo*
12   416 U.S. 637 (1974)                                                        16

13   *Duhaime v. Ducharme*
200 F.3d 597 (9th Cir. 2000)                                                    9

14

*Estelle v. McGuire*
15   502 U.S. 62 (1991)                                                        13

16   *Fry v. Pliler*
__ U.S. __
17   127 S.Ct. 2321 (2007)                                                     10

18   *Hendricks v. Vasquez*
974 F.2d 1099 (9th Cir. 1992)                                                  13

19

*Holgerson v. Knowles*
20   309 F.3d 1200 (9th Cir. 2002)                                              9

21   *In re Marriage of Sachs*
95 Cal.App.4th 1144 (2002)                                                     12

22

*Jammal v. Van de Kamp*
23   926 F.2d 918 (9th Cir. 1991)                                              13

24   *Jeffries v. Blodgett*
5 F.3d 1180 (9th Cir. 1993)                                                    13

25

*Lockyer v. Andrade*
26   538 U.S. 63 (2003)                                                         9

27   *Namet v. United States*
373 U.S. 179 (1963)                                                           14

28

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

ii

**TABLE OF AUTHORITIES** **(continued)**

Page

*Parle v. Runnels*
505 F.3d 922 (9th Cir. 2007) ................................................................... 16

*People v. Mincey*
2 Cal.4th 408 (1992) ................................................................................ 13

*Price v. Vincent*
538 U.S. 634 (2003) ................................................................................. 9

*Pulley v. Harris*
465 U.S. 37 (1984) ................................................................................... 13

*Rock v Arkansas*
483 U.S. 44 (1987) ................................................................................... 12

*Thomas v. Hubbard*
273 F.3d 1164, (9th Cir. 2001) ................................................................ 16

*United States v. Brickey*
426 F.2d 680 (8th Cir. 1970) ................................................................... 14

*United States v. Castro*
129 F.3d 226 (1st Cir. 1997) ............................................................ 12, 14

*United States v. Scheffer*
523 U.S. 303 (1998) ................................................................................. 12

*Williams v. Taylor*
529 U.S. 362 (2000) ................................................................................. 9

*Wood v. Alaska*
957 F.2d 1544 (9th Cir. 1992) ................................................................. 13

*Woodford v. Visciotti*
537 U.S. 19 (2002) ................................................................................... 9

**Constitutional Provisions**

Fifth Amendment ..................................................................................... 11

Fourteenth Amendment ............................................................................ 13

**Statutes**

28 U.S.C.
    § 2254(d)(1) ........................................................................................ 9

Memorandum of Points and Authorities in Support of Supplemental Answer     Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

iii

**TABLE OF AUTHORITIES  (continued)**

**Page**

California Evidence Code
    § 402          10
    § 913          12, 13

California Penal Code
    § 136.1, subd. (b)(1)      1
    § 182, subd. (a)(1)      2
    § 187      2
    § 211      1
    § 261, subd. (a)(2)      1
    § 288a, subd. (c)(2)      1
    § 289, subd. (a)(2)      1
    § 422      1, 12
    § 459      1
    § 653f, subd. (b)      2
    § 667.5, subd. (b)      2
    § 667.61, subd. (e)(2)      2
    § 667.61, subd. (e)(6)      2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum of Points and Authorities in Support of Supplemental Answer      Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

iv

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  AMY HADDIX, State Bar No. 183944
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5893
    Fax:  (415) 703-1234
8   Email:  Amy.Haddix@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13
   ANTHONY E. JOHNSON,                    C 06-5539 MJJ (PR)
14
                          Petitioner,     **MEMORANDUM OF POINTS**
15                                        **AND AUTHORITIES IN**
                                          **SUPPORT OF**
16         v.                             **SUPPLEMENTAL ANSWER**
                                          **TO PETITION FOR WRIT OF**
   TONY MALFI, Warden, et al.,            **HABEAS CORPUS**
17
                          Respondent.
18

19

20              **STATEMENT OF THE CASE**

21         Petitioner's commitment results from two separate jury trials.  On October 9, 2002, a jury

22  convicted petitioner in case number SCR-31910 of forcible rape (Cal. Pen. Code § 261, subd. (a)(2)

23  – count 1), forcible oral copulation (Cal. Pen. Code § 288a, subd. (c)(2) – count 2), forcible sexual

24  penetration by a foreign object (Cal. Pen. Code § 289, subd. (a)(2) – count 3), robbery (Cal. Pen.

25  Code § 211 - count 4), burglary (Cal. Pen. Code § 459 – count 5), terrorist threats (Cal. Pen. Code

26  § 422 – count 6), and dissuading a witness (Cal. Pen. Code § 136.1, subd. (b)(1) – count 7).  As to

27  counts 1 through 3, the jury found true allegations that petitioner engaged in tying or binding of the

28

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
                                                                                C 06-5539 MJJ (PR)

1

1    victim (Cal. Pen. Code § 667.61, subd. (e)(6)), and that he committed the sexual offense during a

2    burglary (Cal. Pen. Code § 667.61, subd. (e)(2)).  CT [SCR-31910] 6-12 [information]; CT [SCR-

3    31910] 204-215 [verdicts].  Petitioner separately admitted that he had served two prior prison terms

4    within the meaning of California Penal Code § 667.5, subdivision (b).  CT [SCR-31910] 216.

5        On December 11, 2002, a separate jury convicted petitioner in case number SCR-31911, of

6    solicitation to commit murder (Cal. Pen. Code § 653f, subd. (b) – count 1), and conspiracy to

7    commit murder (Cal. Pen. Code §§ 182, subd. (a)(1) & 187 – count 2). CT [SCR-31911] 65-67

8    [amended information]; CT [SCR-31911] 197, 245-246 [verdicts].

9        On April 10, 2003, the trial court sentenced petitioner on both cases to a determinate term

10   of 25 years and an indeterminate term of 50 years to life in prison.  CT [SCR-31910] 236-243; CT

11   [SCR-31911] 280-286.

12       On March 21, 2006, the California Court of Appeal affirmed petitioner's convictions and

13   sentence in a written opinion.  Exhibit 9.  On June 21, 2006, the California Supreme Court denied

14   petitioner's petition for review.  Exhibit 11.

15       On September 11, 2006, petitioner filed a pro se habeas corpus petition challenging the

16   judgment in SCR-31910 (Case No. C 06-5539 MJJ).  On October 11, 2006, petitioner filed a second

17   pro se habeas corpus petition challenging the judgment in SCR-31911 (Case No. C 06-6376 MJJ).

18   This court issued an order to show cause in both cases.  Respondent answered the petition in Case

19   No. C 06-5539 MJJ, and moved to dismiss the petition in Case No. C 06-6376 MJJ as a second or

20   successive petition.  On December 14, 2007, this Court denied the motion to dismiss, ordered that

21   the two cases be consolidated under the first case number, and ordered Respondent to file a

22   supplemental answer to the two cognizable claims raised in the second petition.

23

24                          **STATEMENT OF FACTS**

25   **Rape And Robbery Trial (Case No. SCR-31910)**

26       On November 21, 2001, the victim, "Patti," was working at the Redwood Gospel Mission

27   Thrift Store in Santa Rosa.  RT 514-515, 519.  Around 4:00 p.m., petitioner entered the thrift store.

28

Memorandum of Points and Authorities in Support of Supplemental Answer        Anthony E. Johnson v. Toni Malfi, et al.
                                                                                              C 06-5539 MJJ (PR)

1  Patti recognized petitioner, who previously had worked in the store and dropped by on occasion to

2  visit with the employees.  Petitioner walked directly to the back of the store without greeting Patti,

3  which was unusual.  RT 521-524, 595, 606, 610.

4      At 5:00 p.m., Patti emptied the register, locked the proceeds (approximately $500) in the

5  store safe and turned out the lights.  As she was walking towards the front of the store, petitioner

6  tackled her from behind with "great force," throwing her to the ground.  RT 530-536, 630, 633.

7  Petitioner grabbed Patti by the hair and dragged her into the employee lunch room.  He covered her

8  eyes with duct tape, bound her hands behind her back, and tied her feet together with a cord.  RT

9  535-537, 641-644, 655.

10      Petitioner told Patti, "I want the money."  Patti immediately recognized petitioner's voice.

11  She could also see petitioner through gaps in the duct tape, although she averted her eyes,

12  exclaiming, "I don't want to see your face."  Patti told petitioner to calm down, that she would help

13  him get what he wanted.  RT 537-538, 571, 641, 644.  Petitioner retrieved Patti's purse from the

14  front of the store.  He dragged Patti to the office, where she located her keys and unlocked the door.

15  At petitioner's direction, Patti unlocked the safe.  He directed her to kneel in a corner while he

16  removed the money and the surveillance videotape.  RT 538-543, 650-653, 656-657, 706.

17      Petitioner dragged Patti by the hair back into the employee lunch room, threw her face

18  down on the floor, and pulled down her pants.  Patti pleaded with petitioner not to rape her.  RT 543-

19  544.  Petitioner penetrated Patti's vagina with his finger, and then sat on her chest and ordered her

20  to "suck his dick."  She complied.  RT 544-545, 548, 660, 662-663.  Petitioner raped Patti.  She

21  protested, "stop," and "you're hurting me" but petitioner continued.  RT 544-545, 666.  Patti felt

22  pain in her vagina.  RT 545.  Petitioner commented, "I bet this feels real good, don't it."  RT 545.

23  He ordered Patti to pull her sweater over her face, and he held his hand over her nose and mouth,

24  making it difficult for Patti to breathe.  RT 544-546, 665-666.  After a few minutes, petitioner

25  ejaculated.  RT 546, 670.

26      When he finished, petitioner asked Patti, "Do you know who I am?"  In fear for her life,

27  Patti lied and said that she did not.  RT 546-547, 671.  Petitioner replied, "Well, I know who you

28

Memorandum of Points and Authorities in Support of Supplemental Answer      Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

3

are, and if you tell . . . I'll come back and I will kill you." RT 546, 671.  Petitioner took Patti's purse and left the store.  RT 547, 549.

Patti called 911.  RT 500, 548-549; Trial Exh. 1 & 1A.  When police arrived, Patti was disheveled and crying hysterically.  RT 507-509, 671, 696.  She was nude from the waist down, with a sheet wrapped around her, and she had duct tape wrapped around her head and face.  RT 508-509, 697.  Patti told police that she knew her attacker, although she could not remember his name.  RT 571; Trial Exh. 1 at 1-2.  She identified petitioner in a photographic lineup and at trial.  RT 521-522, 724-726.

Patti suffered a bruise to her left jaw and her right forearm, and soreness in her back and shoulders.  RT 742-743, 791-793.  A sexual assault examination revealed that Patti had petachiae (abrasion) on her hymenal tissue and three lacerations to her vaginal opening.  RT 794-795.  The findings were consistent with forced intercourse.  RT 800, 821.

The sexual assault examination revealed the presence of sperm in Patti's vagina.  RT 847.  DNA testing matched the sperm to a known sample from petitioner.  The chances of a false match were 1 in 3.3 trillion African Americans, 1 in 3.3 trillion Caucasians, and 1 in 14 trillion Hispanics.  RT 873-874.

After petitioner's arrest, Patti received two collect calls from petitioner, who was in jail.  She refused the calls.  Patti was unsettled because she had an unlisted number.  RT 572-573.  Petitioner also called the thrift store manager, Anna Bernardi, at her home.  He asked Bernardi if she intended to testify at the preliminary hearing.  She said no and hung up.  Bernardi was "scared to death" because she had an unlisted number.  RT 751-753.

In addition to the charged acts, the prosecution introduced evidence of three uncharged sexual offenses pursuant to California Evidence Code section 1108.

On August 7, 2000, clinical psychologist Lee Haworth taught an evening class in Santa Rosa.  Petitioner attended the class.  RT 483-485, 489.  After everyone had left and Haworth was alone, petitioner reentered the classroom and approached her.  RT 486-487, 489.  He asked Haworth a question about class attendance.  As Haworth looked up from her desk, she saw that petitioner had

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

4

1    exposed his penis within two feet of her face.  RT 486, 495-496.  Haworth was shocked, but she

2    remained calm and answered petitioner's question.  She then gathered her things and left the room.

3    She reported the incident the next day.  RT 487-488.

4           On March 5, 2002, correctional officer Lisa Ricci was working at the Sonoma County Jail.

5    Petitioner was outside in the exercise yard.  Ricci looked up and saw that petitioner was holding his

6    erect penis in his hands and "glaring" at her.  RT 758-759, 761-765.  The way petitioner looked at

7    Ricci "creeped [her] out."  RT 765, 771-772.  Ricci reported the incident and petitioner was removed

8    from the yard.  Petitioner later apologized to Ricci for his conduct.  RT 765-766, 770.

9           On August 7, 2002, Dr. Megan Burns was working in the Sonoma County jail.  As she

10   walked down the hall, she noticed movement in one of the cells.  She turned and saw petitioner

11   standing on the bed, facing her, rubbing his partially erect penis.  Dr. Burns reported the incident

12   to a correctional officer.  RT 685-687.

13   **Conspiracy And Solicitation To Commit Murder Trial (Case No. SCR-31911)**

14          Consistent with her testimony at the first trial, Patti testified that on November 21, 2001,

15   petitioner robbed and raped her at the Redwood Gospel Mission Thrift Store.  RT 1151-1157.  When

16   he was through, petitioner asked Patti, "Do you know who I am," to which she replied, "How am

17   I supposed to know who you are?"  RT 1156.  Petitioner then stated, "Well, I know who you are.

18   And if you tell, . . . I will come back and kill you."  RT 1157.  Despite this threat, Patti immediately

19   reported petitioner's crimes to the police.  RT 1157-1158.

20          Petitioner's wife, Cathy Petersen-Johnson[1/], pleaded guilty to solicitation to commit the

21   murder of Patti, in exchange for a sentence of nine-years and eight-months in prison.  She agreed

22   as part of her plea bargain to testify truthfully at petitioner's trial.  RT 1220-1224.

23          Petitioner was arrested on rape and robbery charges on November 22, 2001.  Petersen

24   visited petitioner every day in jail.  RT 1227-1228.  During one visit, petitioner asked Petersen

25   whether the charges would be dismissed if Patti was "gone."  Petersen said that she did not know.

26   RT 1233-1235.  Petitioner asked Petersen to visit the thrift shop to determine whether Patti still

27

28          1.  We refer to petitioner's wife by her maiden name to avoid confusion with petitioner.

Memorandum of Points and Authorities in Support of Supplemental Answer     Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

5

1   worked there.  He gave Petersen a description of Patti and a copy of the police report.  RT 1231-

2   1232.  Petersen suspected from their conversations that petitioner wanted to locate Patti so that he

3   could have her killed.  RT 1231-1232.

4           During the week of November 26, 2001, Detective Mike Tosti of the Santa Rosa Police

5   Department received information from a confidential informant that petitioner was trying to solicit

6   someone to kill Patti.  RT 1163, 1321.  Detective Tosti decided to go undercover by posing as a hit

7   man.  RT 1166, 1325.

8           Around that same time, petitioner told Petersen that someone had approached him in the

9   jail and offered to help him with his "predicament."  He gave Petersen a telephone number of a man

10  named "Kev" and asked her to arrange a meeting between Kev and petitioner at the jail.  RT 1233-

11  1235, 1237-1238, 1243, 1301.  Petersen understood that Kev was a hit man and that petitioner

12  wanted to hire Kev to kill Patti.  Petitioner asked Petersen to act as the "money person" and she

13  agreed.  RT 1225-1226, 1238, 1244, 1246, 1305, 1308, 1313-1314.

14          On December 10, 2001, Petersen telephoned Detective Tosti, who was  posing as Kev.

15  The conversation was tape-recorded and played for the jury.  RT 1326-1329; Trial Exh. 3A.

16  Petersen asked Detective Tosti to meet with petitioner at the jail the following day.  RT 1325; Trial

17  Exh. 3A.  She identified herself as petitioner's wife and stated, "I'm the one doing the money."

18  Trial Exh. 3A at 2-3; RT 1172.

19          On December 11, 2001, Detective Tosti, posing as Kev, met petitioner at the Sonoma

20  County jail.  RT 1330.  The meeting was tape-recorded and played for the jury.  RT 1174-1175,

21  1330-1332; Trial Exh. 3B.  Petitioner told Detective Tosti that "this person's just in the way, you

22  know" and "I just need her handled . . . whatever the price is . . . ."  Trial Exh. 3B at 2.  Detective

23  Tosti asked petitioner if he wanted him to "just fuck her up and put the fear of god in the bitch?"

24  Trial Exh. 3B at 4.  Petitioner replied, "No. . . . That's another chance of her coming back."  Trial

25  Exh. 3B at 4.  Detective Tosti told petitioner that "it's going to cost you more if you want me to kill

26  her" and petitioner replied that the money would not be a problem.  Trial Exh. 3B at 4.  Detective

27  Tosti and petitioner agreed on a price of $5,000  with a $1,000 down payment.  RT 1190-1191, Trial

28

Memorandum of Points and Authorities in Support of Supplemental Answer      Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

6

1   Exh. 3B at 5, 8.  He showed petitioner pictures of Patti and petitioner confirmed the target.  RT

2   1176, 1189, 1331-1332; Trial Exh. 3B at 9.  Detective Tosti asked petitioner if he wanted to send

3   a message or make it look like an accident.  Petitioner replied, "Shit.  I want that bitch chopped up."

4   Trial Exh. 3B at 13.  Petitioner confirmed that he was "for real" (Trial Exh. 3B at 14) and that his

5   wife could be trusted.  Petitioner recounted, "I told her that if – if push comes to shove and this shit

6   don't happen, I'll put a gun – a throwaway gun to her and she'll do it herself.  That's how tough she

7   is."  Trial Exh. 3B at 15.  Detective Tosti said, "All right.  No going back now, you're sure" to which

8   petitioner replied, "I'm positive" and "It's either you or I go – find somebody else . . . ."  Trial Exh.

9   3B at 20.

10       Later in the day on December 11, 2001, Detective Tosti contacted Petersen.  The

11   conversation was tape-recorded and played for the jury.  RT 1335-1337; Trial Exh. 5A.  They

12   discussed a "payment plan" for the $5,000, and agreed that Petersen would pay $200 that day, with

13   another $800 due on Friday.  Trial Exh. 5A at 1-2, 4-5, 7; RT 1192, 1249-1250.  Petersen and

14   Detective Tosti agreed to meet at a K-mart parking lot in Santa Rosa.  Trial Exh. 5A at 3-4, 9; RT

15   1252.  After speaking with Detective Tosti, Petersen secured a $200 cash advance from her

16   employer.  RT 1250-1252.

17       Later that same day, Detective Tosti and Petersen met in the parking lot and Petersen gave

18   Detective Tosti $200 in cash.  RT 1195, 1252, 1310-1311, 1343-1347.  The meeting was videotaped

19   and audiotaped and played for the jury.  RT 1193-1195, 1343-1346; Trial Exhs. 6, 6A, & 7.

20   Detective Tosti told Petersen that  petitioner wanted Patti dead, and asked her if she was "all right

21   with that."  Trial Exh. 6A at 4.  She confirmed that she was.  Trial Exh. 6A at 4-5; RT 1197, 1253.

22   They arranged to meet at the same location on Friday.  Trial Exh. 6A at 5.

23       Following the meeting with Detective Tosti, Petersen met with petitioner in jail.  RT 1254.

24   Petitioner was upset with Petersen that she only paid $200 to "Kev."  Petersen replied that she did

25   not want to go through with the plan to kill Patti.  Petitioner became mad and yelled at Petersen to

26   "squash it" then, meaning to cancel the plan.  RT 1254-1255, 1311.

27       Petersen was arrested for solicitation of murder on December 12, 2001.  RT 1198, 1227.

28

Memorandum of Points and Authorities in Support of Supplemental Answer      Anthony E. Johnson v. Toni Malfi, et al.
                                                                            C 06-5539 MJJ (PR)

7

1    **Defense Case**

2        Petitioner presented no defense in case number SCR-31910.

3        Petitioner testified on his own behalf in case number SCR-31911.  He admitted the

4    substance of the conversations he had with his wife and Detective Tosti, and that he had attempted

5    to hire Detective Tosti to kill Patti.  RT 1466, 1482-1483.  Petitioner maintained that, shortly after

6    his arrest, an inmate named Marvin Jackson approached him in the jail and questioned him

7    extensively about his charges.  RT 1467.  Jackson offered to help petitioner with his "situation,"

8    which petitioner understood to mean helping him retain private counsel.  RT 1468-1469.  After

9    approximately three meetings, petitioner realized that Jackson was referring to killing the witness

10   in petitioner's case, Patti.  Jackson told petitioner there was no other way to beat the prosecution.

11   RT 1471-1472, 1497.  Petitioner was "shocked" at the offer and declined it because he wanted to

12   "face the charge head on, like a man."  RT 1472, 1497.

13       Jackson continued to proposition petitioner.  Jackson was affiliated with a prison gang and

14   stated that he had heard from anonymous sources that people in prison wanted revenge on petitioner.

15   RT 1475-1477, 1491.  According to petitioner, he had enemies in prison who were upset that he had

16   refused to participate in a riot in 1997.  RT 1560-1561.  Jackson guaranteed that petitioner would

17   be tortured and killed in prison.  RT 1474-1475, 1491, 1503-1504, 1552.  Petitioner finally agreed

18   to have Patti killed, not because he wanted her dead, but because he was afraid of what would

19   happen to him if he were convicted.  RT 1479-1480, 1491, 1500.

20       Petitioner admitted writing letters to his wife while in jail that set forth the elements of

21   entrapment and coached her on her testimony in court.  RT 1479-1480, 1482, 1527-1528, 1531.  In

22   one letter, petitioner wrote, "Sweetheart, understand you're the last person I would hold grudges

23   against through all of this, but just know one thing, if nothing else, and that is anything you do in

24   life, whether it be petty or large, there is always consequences to everything, no matter what.  Just

25   be ready to pay the price."  RT 1540.

26

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer        Anthony E. Johnson v. Toni Malfi, et al.
                                                                                                                    C 06-5539 MJJ (PR)

1

**ARGUMENT**

2

**I.**

3

**STANDARD OF REVIEW APPLICABLE TO STATE PRISONER'S
HABEAS PROCEEDINGS**

4

5      This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

6   (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

7   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

8   U.S. 19, 24 (2002) (per curiam).  Under AEDPA, the federal court has no authority to grant habeas

9   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

10  clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to"

11  law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

12  question of law, or reaches a different conclusion based on facts materially indistinguishable from

13  a Supreme Court case.  *Williams v. Taylor,* 529 U.S. 362, 413 (2000).  A decision constitutes an

14  "unreasonable application" of Supreme Court precedent if the state court identifies the correct

15  governing legal principles, but the application of law to the facts is not merely erroneous but

16  objectively unreasonable.  *Id.* at 411-413; *accord, Price v. Vincent,* 538 U.S. 634, 641 (2003);

17  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067-1069 (9th

18  Cir. 2003).  The petitioner bears the burden of showing that the state court's decision was

19  unreasonable.  *Woodford v. Visciotti*, 537 U.S. at 25.

20      Further, AEDPA limits the basis for federal habeas relief exclusively to "clearly

21  established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

22  2254(d)(1); *Williams v. Taylor*, 529 U.S. at 412.  Thus, a state court decision may not be overturned

23  on habeas review simply because of a conflict with circuit law.  *Duhaime v. Ducharme,* 200 F.3d

24  597, 598, 602-603 (9th Cir. 2000).  If the Supreme Court has not clearly established the rule on

25  which petitioner relies, habeas relief is unavailable.  *Clark v. Murphy*, 331 F.3d at 1069; *Holgerson*

26  *v. Knowles*, 309 F.3d 1200, 1202 (9th Cir. 2002).

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer        Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

1    Finally, even if a constitutional error occurred, habeas relief is available only if the error

2    had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

3    *Abrahamson*, 507 U.S. 619, 637 (1993); see *Fry v. Pliler*, __ U.S. __, 127 S.Ct. 2321, 2325-2327

4    (2007) (*Brecht* standard applies in all § 2254 cases).

5

6                                              **II.**

7          **THE TRIAL COURT DID NOT VIOLATE PETITIONER'S RIGHTS TO
           DUE PROCESS AND TO PRESENT A DEFENSE BY REFUSING TO
8          COMPEL DEFENSE WITNESS MARVIN JACKSON TO INVOKE HIS
           PRIVILEGE AGAINST SELF-INCRIMINATION IN FRONT OF THE
9          JURY, OR TO INSTRUCT THE JURY THAT IT COULD DRAW A
           NEGATIVE INFERENCE THEREFROM**

10         During trial, petitioner sought to call Marvin Jackson as a witness to corroborate his claim

11   that Jackson had entrapped him into committing the crimes of solicitation and conspiracy to commit

12   murder. In a hearing outside the presence of the jury, Jackson invoked his Fifth Amendment

13   privilege and refused to answer any questions posed to him. Petitioner asked the court to compel

14   Jackson to be sworn and to invoke the privilege in front of the jury. The trial court denied the

15   request.

16         Petitioner claims that the trial court's ruling deprived him of his constitutional rights to

17   due process and to present a defense. He is incorrect. No permissible inference of guilt lies from

18   the exercise of a constitutional privilege against self incrimination. Petitioner was not entitled to

19   present irrelevant evidence to the jury or to argue speculative inferences therefrom.

20

21         **A.    Proceedings Below**

22         During the trial, petitioner stated his intent to call Marvin Jackson as a witness to

23   substantiate the defense theory of entrapment. (RT 1132, 1271-1273.) The trial court appointed

24   counsel for Jackson and held an Evidence Code section 402 hearing on the issue of Jackson's Fifth

25   Amendment privilege against self incrimination. (RT 1440.) Counsel for Jackson stated that

26   Jackson would refuse to testify under any circumstances, and that counsel had advised Jackson that

27   doing so might subject him to contempt charges. "So therefore, he'd have to exercise his Fifth

28

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
                                                                          C 06-5539 MJJ (PR)

Amendment privilege not to be held in contempt." (RT 1440; see also RT 1443.) Petitioner objected that it was improper to invoke the Fifth Amendment to avoid the criminal sanction of contempt for refusing to testify. (RT 1441, 1443-1444.) Outside of the presence of the jury, Jackson was sworn and refused to testify on the basis that he might incriminate himself. (RT 1455.) The court stated, "I don't believe you have a Fifth Amendment – you have any penal interest to be protected. Therefore, this court orders you to answer that question." (RT 1446.) Jackson again refused to answer on the grounds that it might incriminate him. (RT 1446.) The trial court admonished Jackson that he could be held in contempt of court, but Jackson still refused to answer any questions. (RT 1449.) Petitioner requested a finding that Jackson had no valid Fifth Amendment privilege. (RT 1447-1448.) The court replied that Jackson's refusal to testify had "conclud[ed] this matter" and deferred any hearing on a contempt issue until the conclusion of the trial. (RT 1449.)

Subsequently, petitioner requested that Marvin Jackson be required to take the stand and refuse to testify in front of the jury, or that the court inform the jury of his refusal to testify. (RT 1606.) He argued that Jackson had no Fifth Amendment privilege to refuse to testify based upon the threat of contempt. (RT 1607-1608, 1613-1614.) The district attorney countered that it is never proper to force a witness to assert his Fifth Amendment privilege in front of the jury, and that the scope of Jackson's testimony risked subjecting him to prosecution for making a terrorist threat against petitioner. (RT 1609, 1611.)

The trial court denied petitioner's request. The court observed that Jackson's attorney "did indicate that his client was asserting his Fifth Amendment right, and the client himself, as I recall, also stated that." (RT 1614.) The court concluded that, "under the rules as the court understands them, when a witness takes the Fifth Amendment, that is not to be done in front of the jury." (RT 1614.)

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

11

1
2

**B.    The Trial Court's Refusal To Compel Jackson To Invoke His Privilege In The Jury's Presence Was Consistent With California Statutory Law And Did Not Deprive Petitioner Of His Rights To Due Process Or To Present A Defense**

3          California Evidence Code section 913, subdivision (a) prohibits the trial court and counsel

4    from commenting on a witness's assertion of a privilege.  It further provides that "the trier of fact

5    may not draw any inference [from the assertion of a privilege] as to the credibility of the witness or

6    as to any matter at issue in the proceeding."

7          The state Court of Appeal found that Jackson had a valid basis for asserting the privilege

8    against self incrimination.  "[T]he district attorney pointed out that defendant had made an offer of

9    proof that Jackson had threatened defendant with death if he did not arrange to kill P.  If true, this

10   conduct would have furnished ' ""a link in the chain of evidence needed to prosecute'"" him for the

11   criminal offense of making criminal threats (Pen. Code, § 422) or other criminal liability (*In re*

12   *Marriage of Sachs* (2002) 95 Cal.App.4th 1144, 1151.)  Thus, the [trial] court would have been

13   within its discretion to conclude that, on this key issue, the assertion of the privilege would be valid,

14   and that it would therefore be error to force Jackson to invoke it before the jury.  (See *ibid*. [the court

15   may compel a witness to answer only if it ' "' clearly appears'"' that the testimony ' ""'cannot

16   possibly have a tendency to incriminate the person claiming the privilege'""]; see also *United States*

17   *v. Castro* (1st Cir. 1997) 129 F.3d 226, 229.)"  Exhibit 9 at p. 19.  Accordingly, the provisions of

18   California Evidence Code section 913 squarely applied.  That section prohibited petitioner from

19   compelling Jackson to invoke his privilege in front of the jury or from drawing negative inferences

20   therefrom.

21          Application of the ordinary rules of evidence generally does not impermissibly infringe

22   on a defendant's right to present a defense.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

23   "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding

24   evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so

25   long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"

26   *Scheffer*, at 308, quoting *Rock v Arkansas*, 483 U.S. 44, 56 (1987).

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer          Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

12

1    Likewise, application of state evidentiary rules rarely forms the basis for a due process

2 challenge. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hendricks v. Vasquez*, 974 F.2d 1099,

3 1105 (9th Cir. 1992). In order to be cognizable under 28 U.S.C. § 2254, the error of state law must

4 be so egregious that it renders the trial fundamentally unfair in violation of the Fourteenth

5 Amendment's Due Process Clause. *Estelle v. McGuire*, 502 U.S. at 72-73; *Pulley v. Harris*, 465

6 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 191-20 (9th Cir. 1991); *Jeffries v.*

7 *Blodgett,* 5 F.3d 1180, 1192 (9th Cir. 1993).

8    *People v. Mincey*, 2 Cal.4th 408 (1992), rejected a challenge to California Evidence Code

9 section 913 as infringing on the defendant's federal constitutional rights to due process and to

10 present a defense. There, the court held that an inference of guilt does not logically follow from a

11 witness's invocation of the privilege against self-incrimination. "A person may invoke the

12 constitutional privilege against self-incrimination for a reason other than guilt. The privilege may

13 be asserted, for example, simply to insure that the prosecution against a person charged with a crime

14 is not helped by that person's own statements. Thus, inferring guilt from the mere exercise of the

15 privilege would be improper and is at best based on speculation, not evidence." *Id*. at 441.

16    The federal circuit courts are in accord. It has long been recognized that "A defendant has

17 no right . . . to present irrelevant evidence." *Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir. 1992).

18 In *Bowles v. United States*, 439 F.2d 536 (D.C. Cir. 1970), the court of appeal affirmed the trial

19 court's decision not to allow defense counsel to comment on the decision of a witness to invoke his

20 Fifth Amendment privilege. "We find no error in these rulings. It is well settled that the jury is not

21 entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege

22 whether those inferences be favorable to the prosecution or the defense. [Citation.] The rule is

23 grounded not only in the constitutional notion that guilt may not be inferred from the exercise of the

24 Fifth Amendment privilege but also in the danger that a witness's invoking the Fifth Amendment

25 in the presence of the jury will have a disproportionate impact on their deliberations. The jury may

26 think it high courtroom drama of probative significance when a witness 'takes the Fifth.' In reality

27 the probative value of the event is almost entirely undercut by the absence of any requirement that

28

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

13

the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination.  [Citation.]"  *Id.* at 541-42; *accord United States v. Castro*, 129 F.3d at 231 ("trial courts should not permit witnesses who have indicated that they will refuse to answer questions on legitimate Fifth Amendment grounds to take the witness stand and assert the privilege in front of the jury").

Consistent with this precedent, the state Court of Appeal observed, "It is well established that it is error to force a witness who validly invokes the Fifth Amendment privilege against self-incrimination to do so in front of the jury, because this procedure would encourage 'inappropriate speculation on the part of jurors about the reasons for the invocation.  An adverse inference, . . . may be drawn by jurors despite the possibility the assertion of the privilege may be based upon reasons unrelated to guilt.'  Exhibit 9 at 18, internal citations omitted.  The court's reasoning was not inconsistent with, or an unreasonable application of, United States Supreme Court precedent.

Petitioner argues that because Jackson did not have a valid privilege to assert, the jury could reasonably draw a negative inference from his refusal to cooperate as a witness, and the trial court erred in excluding that inference.  As discussed above, however, the Court of Appeal concluded that petitioner's testimony, if believed, would have subjected Jackson to criminal liability for terrorist threats made against petitioner.  Specifically, petitioner maintained that Jackson had threatened him with torture and death if petitioner did not arrange to have Patty killed.  RT 1474-1475, 1491, 1503-1504, 1552.  Thus, petitioner's own statements established Jackson's claim of privilege.  On this record, there was at least a "reasonable possibility that, by testifying, [Jackson] may open himself to prosecution."  *United States v. Castro*, 129 F.3d at 229.

Even assuming, however, that Jackson had no legal basis to assert a privilege, the trial court's error, if any, in refusing to allow petitioner to comment on that fact does not reach constitutional dimension.  *See Namet v. United States*, 373 U.S. 179, 185 (1963); *United States v. Brickey,* 426 F.2d 680, 688 (8th Cir. 1970).  The inference petitioner sought to draw from Jackson's failure to testify was not so critical as to deprive him of a fair trial or to undermine his defense theory of the case.

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

14

1

**C.    Harmless Error**

2          Even if the trial court erred in refusing to allow petitioner to draw an inference from

3    Jackson's refusal to testify, the error did not have a "substantial and injurious effect or influence in

4    determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 637.  As the Court of Appeal

5    observed, "Since Jackson clearly stated that he would refuse to testify, the only consequences of the

6    court's ruling was that the defendant was deprived of the right to invite the jury to draw a negative

7    inference from Jackson's refusal to testify.  [Petitioner] reasons the he could have relied upon this

8    negative inference to bolster the credibility of his own testimony that Jackson did in fact threaten

9    him.  Yet, such a threat would only have been relevant to the entrapment defense.  As we have held,

10   [petitioner] failed to present sufficient evidence to support an inference that Jackson was [a police]

11   agent when the alleged threat was made, and the court did not err in refusing to instruct on the

12   entrapment defense.  Consequently, even if we accept the assertion that on the slim thread of this

13   negative inference, the jury might have believed Jackson made the threat, there is no reasonable

14   possibility that drawing a negative inference from Jackson's refusal to testify would have resulted

15   in a more favorable outcome."  Exhibit 9 at 19-20, footnote omitted.

16

17                                                  **III.**

18   **THE CUMULATIVE EFFECT OF THE COURT'S RULINGS
     REFUSING A DEFENSE INSTRUCTION ON ENTRAPMENT AND
19   REFUSING TO ALLOW PETITIONER TO DRAW A NEGATIVE
     INFERENCE FROM JACKSON'S FAILURE TO TESTIFY DID NOT
20   DEPRIVE PETITIONER OF DUE PROCESS**

21          Petitioner argues that the cumulative effect of the trial court's errors in refusing to instruct

22   on the defense of entrapment[2] and refusing to allow petitioner to draw a negative inference from

23   Jackson's refusal to testify combined to deprive him of a fair trial.  We disagree.

24          Although no single alleged error may warrant habeas corpus relief, the cumulative effect

25

26   _____

27          2.  Petitioner's claim that the trial court violated his right to due process by refusing to
     instruct on the defense of entrapment is fully briefed in Argument VII of respondent's answer, filed
28   on April 9, 2007.

Memorandum of Points and Authorities in Support of Supplemental Answer    Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

15

1  of errors may deprive a petitioner of the due process right to a fair trial. *Ceja v. Stewart*, 97 F.3d

2  1246, 1254 (9th Cir.1996). "Under traditional due process principles, cumulative error warrants

3  habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting

4  conviction a denial of due process.' *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Such

5  'infection' occurs where the combined effect of the errors had a 'substantial and injurious effect or

6  influence on the jury's verdict.' *Brecht*, 507 U.S. at 637 (internal quotations omitted); see also

7  *Thomas* [*v. Hubbard*]*,* 273 F.3d [1164,] 1179-81 [(9th Cir. 2001)] (noting similarity between

8  *Donnelly* and *Brecht* standards and concluding that "a *Donnelly* violation necessarily meets the

9  requirements of *Brecht*"). In simpler terms, where the combined effect of individually harmless

10  errors renders a criminal defense 'far less persuasive than it might [otherwise] have been,' the

11  resulting conviction violates due process. See *Chambers* [*v. Mississippi*], 410 U.S. [284] 294,

12  302-03 [(1973)]." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007), parallel citations omitted.

13       This is not the case here. Any inference the jury may have drawn from Jackson's refusal

14  to testify was speculative and lacking in probative value. And, the inference related only to

15  petitioner's claim of entrapment, which was not supported by reliable evidence. Specifically,

16  petitioner presented no evidence that Jackson worked as an agent of the government. And

17  petitioner's own statements to detective Tosti in arranging the hit on Patti strongly demonstrated that

18  he acted out of criminal intent, not fear of Jackson. See Statement of Facts at 6-7. Accordingly,

19  petitioner has not shown the cumulative effect of the alleged errors deprived him of due process.

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer       Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

16

1

**CONCLUSION**

2

3          Accordingly, respondent respectfully requests that this Court discharge the order to show

4    cause, deny the petition for writ of habeas corpus, and dismiss the proceedings.

5          Dated:  February 12, 2008

6                              Respectfully submitted,

7                              EDMUND G. BROWN JR.
                             Attorney General of the State of California
8
                             DANE R. GILLETTE
                             Chief Assistant Attorney General
9
                             GERALD A. ENGLER
10                             Senior Assistant Attorney General

                             PEGGY S. RUFFRA
11                             Supervising Deputy Attorney General

12

13                             /s/  Amy Haddix

14
                             AMY HADDIX
15                             Deputy Attorney General

                             Attorneys for Respondent
16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Supplemental Answer          Anthony E. Johnson v. Toni Malfi, et al.
C 06-5539 MJJ (PR)

17

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Johnson v. Malfi, et al.**

No.:    **C 06-5539 MJJ (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>February 12, 2008</u>, I served the attached

**SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPPLEMENTAL ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

Anthony E. Johnson
California State Prison – Sacramento
Prisoner I.D. #K-00750
P. O. Box 290066
Represa, CA  95671-0066

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 12, 2008, at San Francisco, California.

| | |
|---|---|
| Amy Haddix | /s/  Amy Haddix |
| Declarant | Signature |